Thomas C. Scannell (TX 24070559)
tscannell@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  (214) 999-4289
Facsimile:  (214) 999-3289

ATTORNEYS FOR RREF CB SBL ACQUISITIONS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Chapter 11** |
| **MIS TRES PROPERTIES, LLC,** | § | |
| **291 Windmill Ranch Road** | § | **Case No. 15-50356-CAG** |
| **Spring Branch, Texas 78070,** | § | |
| | § | |
| | § | |
| **Debtor.** | § | |

**RREF CB SBL ACQUISITIONS, LLC'S BRIEF AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY
AND WAIVER OF THE THIRTY-DAY HEARING REQUIREMENT**

RREF CB SBL ACQUISITIONS, LLC'S BRIEF AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND
WAIVER OF THE THIRTY-DAY HEARING REQUIREMENT – COVER PAGE

Gardere01 - 6573184v.2

## Table of Contents

I.     EXECUTIVE SUMMARY ................................................................. 1

II.    APPENDIX OF EVIDENCE ............................................................ 2

III.   FACTUAL BACKGROUND ............................................................. 2

     A.     Movant's Claim ................................................................... 2
         (i)     Loan 2350 ................................................................ 2
         (ii)    Loan 2384 ................................................................ 3
         (iii)   Loan 2392 ................................................................ 5
         (iv)   Loan 2376 ................................................................ 6
         (v)    Loan 2368 ................................................................ 7
         (vi)   Collateral Position ................................................. 8

     B.     Pre-Petition Transfers of the Comal Real Property and the Hidalgo Real Property ................................................................. 10
         (i)     The Comal Real Property ................................... 10
         (ii)    The Hidalgo Real Property ................................. 10

     C.     Debtor's Abuse of Bankruptcy ..................................... 11

IV.   ARGUMENT AND AUTHORITY .................................................. 14

     A.     Stay Does Not Apply to Comal Real Property or Hidalgo Real Property ..... 14

     B.     Brooks Real Property – Relief for "Cause" Under 11 U.S.C. § 362(d)(1) ...... 15
         (i)     Bad Faith ................................................................. 16
         (ii)    Lack of Adequate Protection – No Equity and Shrinking Collateral Position ............................................ 20
         (iii)   Lack of Adequate Protection – Collateral Uninsured ........................ 21

     C.     Brooks Real Property – Relief Under 11 U.S.C. § 362(d)(2) .......................... 22
         (i)     No Equity ................................................................ 23
         (ii)    Not Necessary for an Effective Reorganization ................................. 23

V.     RELIEF REQUESTED ................................................................... 25

Gardere01 - 6573184v.2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brancato v. Trust Co. of Georgia Bank of Savannah, N.A. (In re Pestritto),*
    108 B.R. 850 (Bankr. S.D. Ga. 1989) ........................................................................15

*Cage v. GDH Int'l, Inc. (In re Great Gulfcan Energy Texas, Inc.),*
    488 B.R. 898 (Bankr. S.D. Tex. 2013) ......................................................................15

*Carolin Corp. v. Miller,*
    886 F.2d 693 (4th Cir. 1989) .....................................................................................17

*First Nat'l Bank and Trust Co. of Rockford v. Ausherman (In re Ausherman),*
    34 B.R. 393 (Bankr. N.D. Ill. 1983) ..........................................................................23

*In re FRE Real Estate, Inc.,*
    450 B.R. 619 (Bankr. N.D. Tex. 2011).................................................................17, 18

*In re Fry Road Assoc., Ltd.,*
    66 B.R. 602 (Bankr. W.D. Tex. 1986) (Ayers, C.J.) ............................18, 19, 20, 26

*In re Huie,*
    2007 WL 2317152, No. 07-40627 (Bankr. E.D. Tex. August 8, 2007)...................24

*Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),*
    936 F.2d 814 (5th Cir. 1991) .....................................................................................17

*In re Iliamna Lakeshore Condo., LLC,*
    2010 WL 7920614, No. A10-00440-DMD (Bankr. D. Alaska July 9, 2010) ........23

*In re Kleibrink,*
    346 B.R. 734 (Bankr. N.D. Tex. 2006).....................................................................22

*In re L & M Prop., Inc.,*
    102 B.R. 481 (Bankr. E.D. Va. 1989)..................................................................25, 26

*Laguna Assocs. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs.),*
    30 F.3d 734 (6th Cir. 1994) .......................................................................................17

*Little Creek Dev. Co. v. Commonwealth Mortgage Co. (In re Little Creek Dev. Co.),*
    779 F.2d 1068 (5th Cir. 1986) ..............................................................................17, 20

*In re McManus,*
    30 F.3d 1491 (5th Cir. 1994) .....................................................................................25

*In re Mendoza,*
    111 F.3d 1264 (5th Cir. 1997) ...................................................................................22

*NMSBPCSLDHB v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*,
    384 F.3d 108 (3d Cir. 2004)........................................................................................17

*In re Pierce*,
    272 B.R. 198 (Bankr. S.D. Tex. 2011) .......................................................................15

*In re Playa Dev. Corp.*,
    68 B.R. 549 (Bankr. W.D. Tex. 1986) (Kelly, J.)..............................................25, 26

*S.T.F.G., Inc. v. Int'l Bank of Commerce (In re S.T.F.G., Inc.)*,
    2008 WL 1752135, Bankruptcy No. 07-50102 ....................................................15, 16

*Sutton v. Bank One, Texas, N.A. (In re Sutton)*,
    904 F.2d 327 (5th Cir. 1990) ......................................................................................24

*In re Texas State Optical, Inc.*,
    188 B.R. 552 (Bankr. E.D. Tex. 1995) .......................................................................17

*Trident Assocs. v. Metropolitan Life Ins. Co. (In re Trident Assocs.)*,
    52 F.3d 127 (6th Cir. 1995) ........................................................................................17

*U.S. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*,
    484 U.S. 365 (1988)....................................................................................................25

*In re WGMJR, Inc.*,
    435 B.R. 423 (Bankr. S.D. Tex. 2010) .......................................................................18

## STATUTES

11 U.S.C. § 362(a) ............................................................................................................15

11 U.S.C. §§ 362(c)(1), (j)............................................................................................1, 16

11 U.S.C. § 362(d)(1) ..............................................................................17, 18, 21, 23, 24

11 U.S.C. §§ 362(d)(1), (2)..........................................................................2, 3, 4, 5, 6, 7, 15

11 U.S.C. § 362(d)(2) ................................................................................................24, 25

11 U.S.C. § 362(g)(2) ......................................................................................................24

11 U.S.C. §§ 544, 548 ......................................................................................................19

RREF CB SBL Acquisitions, LLC ("**Movant**"), a secured creditor in the above-captioned bankruptcy case, hereby files this Brief and Memorandum of Law in Support of Motion for Relief from the Automatic Stay and Waiver of the Thirty-Day Hearing Requirement (the "**Brief**").

## I.
## EXECUTIVE SUMMARY

1.      Mis Tres Properties, LLC ("**Debtor**") lists in its Schedule A three (3) principal tracts of real estate assets located respectively in Brooks County, Comal County and Hidalgo County, Texas.  Each of these tracts is encumbered with a valid, consensual first priority lien held by Movant.  Movant's respective security interests are cross-collateralized to secure Debtor's performance under each of five (5) separate promissory notes executed by Debtor and owing to Movant.

2.      As of the February 3, 2015 ("**Petition Date**"), Debtor owned no legal or equitable interests in the scheduled real properties located in Comal County and Hidalgo County, Texas. Prior to the Petition Date, Debtor transferred all of its interest in such property to non-bankruptcy debtor third parties.  The scheduled properties located in Comal County and Hidalgo County, Texas are not property of Debtor's bankruptcy estate and are not subject to the automatic stay in Debtor's bankruptcy case.  Movant requests an order from the Court pursuant to 11 U.S.C. §§ 362(c)(1), (j) confirming the same and permitting Movant's state law collection actions against such property.

3.      The real property located in Brooks County, Texas is Debtor's only asset. Movant is entitled to relief from the stay to pursue its state law collection remedies against the Brooks County, Texas real property pursuant to 11 U.S.C. §§ 362(d)(1), (2) for the following reasons:

RREF CB SBL ACQUISITIONS, LLC'S BRIEF AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND
WAIVER OF THE THIRTY-DAY HEARING REQUIREMENT – PAGE 1
Gardere01 - 6573184v.2

- "cause" due to lack of good faith;

- "cause" due to a lack of adequate protection;

- "cause" due to a lack of insurance on the collateral; and

- there is no equity in the property and the same is not necessary to an effective reorganization.

4.      On these grounds, Movant requests an order from the Court permitting Movant's state law collection actions against all of its collateral.

## II.
## APPENDIX OF EVIDENCE

5.      Movant has filed its *Appendix of Evidence* ("**Appendix**" or "**App.**") contemporaneously herewith in support of this Brief.  Movant cites to the Appendix throughout and in support of this Brief.  Unless otherwise noted, citations herein to "exhibits" or "Ex." are to the Exhibits attached to the Appendix.

## III.
## FACTUAL BACKGROUND

**A.      Movant's Claim**

   **(i)      Loan 2350**

6.      On or about April 28, 2004, Debtor executed that certain Real Estate Lien Note in the original principal amount of $240,000.00 ("**Note 2350**").  [Exhibit A-1, App. 18-25].

7.      Note 2350 is secured by that certain Deed of Trust executed by Debtor on or about April 28, 2004 ("**Deed of Trust 2350**").  [Exhibit A-2, App. 27-34].

8.      The real property subject to Deed of Trust 2350 is commonly referred to in Debtor's Schedule A as 291 Windmill Ranch Road, Comal County, Spring Branch, Texas 78070 ("**Comal Real Property**").  [*Id*.; Exhibit D, App. 610].

9.      Note 2350 is further secured by that certain Guaranty executed by Jaime Rolando Garcia ("**J. Garcia**") and Anastacia V. Garcia ("**A. Garcia**") (J. Garcia and A. Garcia are collectively referred to herein as the "**Guarantors**")[1] on or about April 28, 2004 ("**Guaranty 2350**").  [Exhibit A-3, App. 36-40].

10.     Note 2350, Deed of Trust 2350, Guaranty 2350, and all other documents related thereto, including without limitation Assignment 2350 (described and defined below), are collectively referred to herein as the "**2350 Loan Documents.**"

11.     On or about August 9, 2012, Movant acquired the 2350 Loan Documents via that certain Assignment of Loan Documents ("**Assignment 2350**") executed by Compass Bank and delivered to Movant.  [Exhibit A-4, App. 42-47].

12.     Movant is the owner and holder of the 2350 Loan Documents. [Exhibit A, ¶ 12, App. 9].

13.     Movant is entitled to enforce performance of all terms of the 2350 Loan Documents for the benefit of Movant.  [Exhibit A, ¶ 13, App. 9].

14.     Movant is entitled to collect all amounts due and owing to Movant under the terms of the 2350 Loan Documents. [Exhibit A, ¶ 14, App. 9].

15.     Movant holds a first-priority lien in the Comal Real Property.  [Exhibit A, ¶ 15, App. 9].

**(ii)     Loan 2384**

16.     On or about June 27, 2005, Debtor executed that certain Real Estate Lien Note in the original principal amount of $57,000.00 ("**Note 2384**").  [Exhibit A-5, App. 49-56].

---

[1] The Debtor and the Guarantors are collectively referred to herein as the "**Obligors**."

17.     Note 2384 is secured by that certain Deed of Trust Security Agreement-Financing Statement Assignment of Rents executed by Debtor on or about June 27, 2005 ("**Deed of Trust 2384**").  [Exhibit A-6, App. 58-76].

18.     The real property subject to Deed of Trust 2384 is commonly known as lots 7 and 8, block 4, Brooks County, Falfurrias, Texas and referred to in Debtor's Schedule A ("**Lots 7, 8 - Brooks Real Property**").  [*Id.*; Exhibit D, App. 610].

19.     Note 2384 is further secured by that certain Guaranty executed by Guarantors on or about June 27, 2005 ("**Guaranty 2384**").  [Exhibit A-7, App. 78-82].

20.     Note 2384, Deed of Trust 2384, Guaranty 2384, and all other documents related thereto, including without limitation Assignment 2384 (described and defined below), are collectively referred to herein as the "**2384 Loan Documents.**"

21.     On or about March 26, 2012, Movant acquired the 2384 Loan Documents via that certain Assignment of Loan Documents ("**Assignment 2384**") executed by Compass Bank and delivered to Movant.  [Exhibit A-8, App. 84-91].

22.     Movant is the owner and holder of the 2384 Loan Documents. [Exhibit A, ¶ 22, App. 10].

23.     Movant is entitled to enforce performance of all terms of the 2384 Loan Documents for the benefit of Movant.  [Exhibit A, ¶ 23, App. 10].

24.     Movant is entitled to collect all amounts due and owing to Movant under the terms of the 2384 Loan Documents. [Exhibit A, ¶ 24, App. 11].

25.     Movant holds a first-priority lien in Lots 7, 8 - Brooks Real Property. [Exhibit A, ¶ 25, App. 11].

### (iii)   Loan 2392

26.     On or about December 19, 2005, Debtor executed that certain Real Estate Lien Note in the original principal amount of $50,000.00 ("**Note 2392**").  [Exhibit A-9, App. 93-100].

27.     Note 2392 is secured by that certain Deed of Trust Security Agreement-Financing Statement Assignment of Rents executed by Debtor on or about December 17, 2005 ("**Deed of Trust 2392**").  [Exhibit A-10, App. 102-120].

28.     The real property subject to Deed of Trust 2392 is commonly known as lots 1-6, block 4, Brooks County, Falfurrias, Texas and referred to in Debtor's Schedule A ("**Lots 1-6 - Brooks Real Property**").  [*Id.*; Exhibit D, App. 610].

29.     Lots 7 and 8 – Brooks Real Property and Lots 1-6 – Brooks Real Property are collectively referred to herein as the "**Brooks Real Property**."

30.     Note 2392 is further secured by that certain Guaranty executed by Guarantors on or about December 19, 2005 ("**Guaranty 2392**").  [Exhibit A-11, App. 122-126].

31.     Note 2392, Deed of Trust 2392, Guaranty 2392, and all other documents related thereto, including without limitation Assignment 2392 (described and defined below), are collectively referred to herein as the "**2392 Loan Documents.**"

32.     On or about March 26, 2012, Movant acquired the 2392 Loan Documents via that certain Assignment of Loan Documents ("**Assignment 2392**") executed by Compass Bank and delivered to Movant.  [Exhibit A-12, App. 128-135].

33.     Movant is the owner and holder of the 2392 Loan Documents. [Exhibit A, ¶ 33, App. 12].

34.     Movant is entitled to enforce performance of all terms of the 2392 Loan Documents for the benefit of Movant.  [Exhibit A, ¶ 34, App. 12].

35.     Movant is entitled to collect all amounts due and owing to Movant under the terms of the 2392 Loan Documents. [Exhibit A, ¶ 35, App. 12].

36.     Movant holds a first-priority lien in Lots 1-6 - Brooks Real Property. [Exhibit A, ¶ 36, App. 12].

**(iv)     Loan 2376**

37.     On or about August 5, 2005, Debtor executed that certain Real Estate Lien Note in the original principal amount of $80,000.00 ("**Note 2376**"). [Exhibit A-13, App. 137-146].

38.     Note 2376 is secured by that certain Deed of Trust Security Agreement-Financing Statement Assignment of Rents executed by Debtor on or about August 5, 2005 ("**Deed of Trust 2376**"). [Exhibit A-14, App. 148-166].

39.     The real property subject to Deed of Trust 2376 is Lots 1-6 - Brooks Real Property. [*Id.*].

40.     Note 2376 is further secured by that certain Guaranty executed by Guarantors on or about August 5, 2005 ("**Guaranty 2376**"). [Exhibit A-15, App. 168-172].

41.     Note 2376, Deed of Trust 2376, Guaranty 2376, and all other documents related thereto, including without limitation Assignment 2376 (described and defined below), are collectively referred to herein as the "**2376 Loan Documents.**"

42.     On or about March 26, 2012, Movant acquired the 2376 Loan Documents via that certain Assignment of Loan Documents ("**Assignment 2376**") executed by Compass Bank and delivered to Movant. [Exhibit A-16, App. 174-181].

43.     Movant is the owner and holder of the 2376 Loan Documents. [Exhibit A, ¶ 43, App. 13].

44.     Movant is entitled to enforce performance of all terms of the 2376 Loan Documents for the benefit of Movant. [Exhibit A, ¶ 44, App. 13].

45.     Movant is entitled to collect all amounts due and owing to Movant under the terms of the 2376 Loan Documents. [Exhibit A, ¶ 45, App. 13].

**(v)     Loan 2368**

46.     On or about June 30, 2005, Debtor executed that certain Real Estate Lien Note in the original principal amount of $227,648.17 ("**Note 2368**"). [Exhibit A-17, App. 183-191].

47.     Note 2368 is secured by that certain Deed of Trust Security Agreement-Financing Statement Assignment of Rents executed by Debtor on or about June 30, 2005 ("**Deed of Trust 2368**"). [Exhibit A-18, App. 193-211].

48.     The real property subject to Deed of Trust 2368 contains approximately 75 acres in Hidalgo County, Texas, as further described in Deed of Trust 2368 and referred to in Debtor's Schedule A ("**Hidalgo Real Property**"). [*Id.*; Exhibit D, App. 610].

49.     Note 2368 is further secured by that certain Guaranty executed by Guarantors on or about June 30, 2005 ("**Guaranty 2368**"). [Exhibit A-19, App. 213-217].

50.     Note 2368, Deed of Trust 2368, Guaranty 2368, and all other documents related thereto, including without limitation Assignment 2368 (described and defined below), are collectively referred to herein as the "**2368 Loan Documents**."

51.     On or about March 26, 2012, Movant acquired the 2368 Loan Documents via that certain Assignment of Loan Documents ("**Assignment 2368**") executed by Compass Bank and delivered to Movant. [Exhibit A-20, App. 219-222].

52.     Movant is the owner and holder of the 2368 Loan Documents. [Exhibit A, ¶ 52, App. 14].

53.     Movant is entitled to enforce performance of all terms of the 2368 Loan Documents for the benefit of Movant. [Exhibit A, ¶ 53, App. 14].

54.     Movant is entitled to collect all amounts due and owing to Movant under the terms of the 2368 Loan Documents. [Exhibit A, ¶ 54, App. 14].

55.     Movant holds a first-priority lien in the Hidalgo Real Property.  [Exhibit A, ¶ 55, App. 14].

**(vi)     Collateral Position**

56.     Pursuant to the terms of the Loan Documents,[2] all Collateral[3] is cross-collateralized to secure the performance of all Indebtedness[4] due and owing to Movant under the Loan Documents.  [Exhibit A, ¶ 56, App. 14].

57.     Prior to the Petition Date, Debtor defaulted under the terms of the Loan Documents by, among other defaults, (i) failing to pay amounts due and owing to Movant and (ii) transferring ownership of the Comal Real Property and the Hidalgo Real Property without Movant's consent.  [Exhibit A, ¶ 57, App. 14].

58.     Whether by maturity or acceleration, all Indebtedness owing to Movant under the Loan Documents was due in full prior to the Petition Date and remains due and owing in full to Movant.  [Exhibit A, ¶ 58, App. 15].

59.     Movant filed its Proof of Claim on March 30, 2015, at Claim No. 5 in the claims register of this case in the amount of $932,669.41 ("**Claim**").  [Exhibit B, App. 224-568].

---

[2] The 2368 Loan Documents, 2376 Loan Documents, 2392 Loan Documents, 3284 Loan Documents, 2350 Loan Documents, and all other documents arising therefrom or related thereto are collectively referred to herein as the "**Loan Documents**."

[3] All collateral securing any Indebtedness under the terms of the Loan Documents, specifically including the Comal Real Property, Brooks Real Property, and Hidalgo Real Property, is collectively referred to herein as the "**Collateral**."

[4] All loans, credits, advances and other obligations due and owing to Movant arising from the Loan Documents are collectively referred to herein as the "**Indebtedness**."

60.     The aggregate total of monthly interest accrual on the Indebtedness at the respective non-default rates is $3,126.38.  [Exhibit A, ¶ 59, App. 15].

61.     The Brooks Real Property is valued at $36,000.00.  [Exhibit M, App. 671].

62.     As such, the total value of the Brooks Real Property is less than the amount of Movant's Claim.  Accordingly, there is no equity in the Brooks Real Property over and above the value of Movant's liens in the Collateral.

63.     The 2015 ad valorem tax assessments will accrue against the Brooks Real Property at the approximate rate of $88 per month.  [Exhibit D, App. 616; Exhibit F, App. 633; Exhibit G, App. 637].   The ad valorem taxes are delinquent on the Brooks Real Property. [Exhibit C, App. 590-591; Exhibit D, App. 616; Exhibit F, App. 633; Exhibit G, App. 637].

64.     The 2015 ad valorem tax assessments will accrue against the Comal Real Property at the approximate rate of $488 per month.  [Exhibit D, App. 616; Exhibit I, App. 644-645].  The ad valorem taxes are delinquent on the Comal Real Property.  [Exhibit C, App. 585-586; Exhibit D, App. 616; Exhibit I, App. 644].

65.     The 2015 ad valorem tax assessments will accrue against the Hidalgo Real Property at the approximate rate of $470 per month.  [Exhibit D, App. 616; Exhibit K, App. 662-665; Exhibit L, App. 668].  The ad valorem taxes are delinquent on the Hidalgo Real Property. [Exhibit C, App. 588-589; Exhibit D, App. 616; Exhibit K, App. 662-665; Exhibit L, App. 668].

66.     The Brooks Real Property is not insured against casualty loss.  [Exhibit C, App. 590, lines 21-23].

67.     The Hidalgo Real Property is not insured against casualty loss.  [Exhibit C, App. 588, lines 15-16].

68. Debtor has not provided Movant any manner of adequate protection. [Exhibit A, ¶¶ 60-61, App. 15].

## B. Pre-Petition Transfers of the Comal Real Property and the Hidalgo Real Property

### (i) The Comal Real Property

69. Prior to the Petition Date, Debtor transferred all of its interest in the Comal Real Property to A. Garcia. [Exhibit C, App. 594-595; Exhibit D, App. 610; Exhibit H, App. 639-641].

70. Debtor did not receive any consideration in exchange for transferring the Comal Real Property to A. Garcia. [Exhibit C, App. 584, lines 12-14].

71. Movant did not consent to Debtor's transfer of the Comal Real Property to A. Garcia. [Exhibit A, ¶ 62, App. 15].

72. A. Garcia is 100% owner of the Comal Real Property. [Exhibit H, App. 639-641].

73. A. Garcia is not a bankruptcy debtor.

74. Debtor owns no interest in the Comal Real Property. [Exhibit H, App. 639-641].

75. No part of the Comal Real Property constitutes property of Debtor's bankruptcy estate.

76. The Comal Real Property is not subject to the automatic stay in this case.

### (ii) The Hidalgo Real Property

77. Prior to the Petition Date, Debtor transferred all of its interest in the Hidalgo Real Property to Miguel Chacon Farias, Jose Antonio Faris, and Luis M. Farias Soto (collectively, "**Farias**"). [Exhibit C, App. 587, lines 5-8; Exhibit D, App. 610; Exhibit J, App. 649-660].

78. Movant did not consent to Debtor's transfer of the Hidalgo Real Property to Farias. [Exhibit A, ¶ 63, App. 15].

79.     Farias is 100% owner of the Hidalgo Real Property.  [Exhibit J, App. 649-660].

80.     None of the Farias parties are bankruptcy debtors.

81.     Debtor owns no interest in the Hidalgo Real Property. [Exhibit J, App. 649-660].

82.     No part of the Hidalgo Real Property constitutes property of Debtor's bankruptcy estate.

83.     The Hidalgo Real Property is not subject to the automatic stay in this case.

**C.     Debtor's Abuse of Bankruptcy**

84.     Prior to the Petition Date, Movant initiated a state court lawsuit against the Obligors in the 274th Judicial District Court of Comal County, Texas at Cause No. C2013-1059C to collect the Indebtedness ("**Lawsuit**").  [Exhibit A, ¶ 64, App. 15; Exhibit C, App. 598].

85.     Prior to the Petition Date, Debtor refused to comply with Movant's written discovery requests and otherwise failed to properly defend against Movant's allegations. [Exhibit A, ¶ 65, App. 15].

86.     Prior to the Petition Date, Movant communicated to Debtor its intentions to post the Collateral for non-judicial foreclosure.  [Exhibit A, ¶ 66, App. 15].

87.     In response to Debtor's failing litigation efforts in the Lawsuit, coupled with Movant's communicated, legitimate intentions to post the Collateral for non-judicial foreclosure, Debtor initiated this bankruptcy case as an attempt to evade Movant's lawful collection efforts.

88.     Guarantors are Debtor's only principals.  J. Garcia owns 50% of Debtor's equity. A. Garcia owns 50% of Debtor's equity. [Exhibit E, App. 629].

89.     Debtor has no employees. [Exhibit C, App. 578-579, lines 25-2].

90.     Debtor has no business operations. [Exhibit C, App. 578, lines 21-24; Exhibit N, App. 719-727].

91.     Debtor cannot generate any cash flow. [Exhibit C, App. 578, lines 14-20; Exhibit N, App. 719-727].

92.     The Brooks Real Property is Debtor's only asset.  [Exhibit D, App. 610-614].

93.     The Brooks Real Property does not generate any income. [Exhibit C, App. 589].

94.     The Brooks Real Property does not contribute to Debtor's business.  [Exhibit C, App. 590].

95.     The Comal Real Property does not generate any income. [Exhibit C, App. 582-585].

96.     The Comal Real Property does not contribute to Debtor's business.  [Exhibit C, App. 584, lines 5-7].

97.     The Hidalgo Real Property does not generate any income. [Exhibit C, App. 586-588].

98.     The Hidalgo Real Property does not contribute to Debtor's business.  [Exhibit C, App. 586-588].

99.     Debtor has no intentions to reorganize. [Exhibit C, App. 581, lines 5-9].

100.    Debtor has no intentions to file a chapter 11 plan of reorganization. [Exhibit C, App. 581, lines 10-12].

101.    Debtor has no resources to sustain any chapter 11 plan or reorganization.  [Exhibit C, App. 578, lines 14-24, 579-580; lines 22-16; Exhibit N, App. 719-727].

102.    Obligors have engaged in a pattern of using Debtor's corporate assets to pay Guarantors' personal financial obligations.  [Exhibit C, App. 581-582, lines 18-15; 594-596, lines 24-21; 599-602, lines 15-17].

103.     Guarantors will use any cash flow recovered by Debtor during the pendency of this bankruptcy case for their personal purposes.  [Exhibit C, App. 599-602, lines 15-17].

104.     Farias, although the owner of the Hidalgo Real Property, is also Debtor's only material unsecured creditor.[5]  [Exhibit D, App. 619].

105.     Farias agreed to purchase the Hidalgo Real Property on a "contract for deed" basis, wherein Farias would deliver installment payments to J. Garcia over a period of time. [Exhibit C, App. 594, lines 15-20].

106.     Debtor allegedly owes Farias the amount of $412,500.00, representing the total amount of payments delivered by Farias to Debtor on the contract for deed sale transaction of the Hidalgo Real Property (the "**Farias Debt**").  [Exhibit C, App. 592, lines 4-20; 594, lines 15-20].

107.     Debtor is allegedly obligated on the Farias Debt because Debtor failed to deliver clear title to the Hidalgo Real Property as a result of Movant's lien encumbering the Hidalgo Real Property.  [Exhibit C, App. 592, lines 4-20; 594, lines 15-20].

108.     The Farias Debt exists entirely because of the dispute between Debtor and Movant.  Specifically, had Debtor cooperated with Movant in the sale of the Hidalgo Real Property to Farias and delivered an agreed amount of sale proceeds to Movant, Movant would have released its lien and Farias would now have clear title and have no claim against Debtor. [Exhibit A, ¶ 67, App. 15].

109.     This bankruptcy case is substantively a "two-party dispute" between Debtor and Movant.

---

[5] The only unsecured creditors besides Farias are Ranger Environmental Services, Inc. ("**Ranger**") in the amount of $2,155.00 and American InfoSource LP in the amount of $1,901.40 ("**American**"). [*See* Claim No. 2, filed by American on February 12, 2915, in the Claims Register of this bankruptcy case.].

**IV.**
**ARGUMENT AND AUTHORITY**

110.    The automatic stay does not apply to the Comal Real Property or the Hidalgo Real Property in this case because the Debtor does not possess any interest in such property. Movant is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1), (2) to pursue its state law collection remedies against the Brooks Real Property.

**A.**    **Stay Does Not Apply to Comal Real Property or Hidalgo Real Property**

111.    The automatic stay of 11 U.S.C. § 362(a) does not protect any property other than property of the estate. *See In re Pierce*, 272 B.R. 198, 211 (Bankr. S.D. Tex. 2011) ("[s]ection 362 stay does not protect any party other than the debtor and does not protect any property other than property of the estate."); *see also, e.g., Cage v. GDH Int'l, Inc. (In re Great Gulfcan Energy Texas, Inc.)*, 488 B.R. 898, 922 (Bankr. S.D. Tex. 2013) (real property not subject to automatic stay because debtor did not own any interest in subject real property). Likewise, the stay does not extend to protect against foreclosure proceedings on property owned by non-debtors. *See, e.g., S.T.F.G., Inc. v. Int'l Bank of Commerce (In re S.T.F.G., Inc.)*, 2008 WL 1752135, Bankruptcy No. 07-50102, Adversary No. 07-5005 (Bankr. S.D. Tex. April 14, 2008); *see also Brancato v. Trust Co. of Georgia Bank of Savannah, N.A. (In re Pestritto)*, 108 B.R. 850 (Bankr. S.D. Ga. 1989) (foreclosure action against property in which debtor transferred all of its legal and equitable interest pre-petition was not subject to automatic stay).

112.    In *S.T.F.G.*, the chapter 11 debtor filed an adversary proceeding alleging that its secured lender violated the automatic stay by foreclosing post-petition on real property owned by the debtor's non-bankruptcy debtor affiliate. *See S.T.F.G.*, 2008 WL 1752135 at *1. The chapter 11 debtor was obligated on the indebtedness secured by the subject real property. *See id.* at *2. The chapter 11 debtor alleged that the foreclosure impacted its "arguable rights" in the

subject real property. *See id.* at \*2. The Court granted the lender's motion to dismiss because the subject real property was not property of the estate, not subject to the automatic stay, and therefore, foreclosure could not violate the automatic stay. *See id.* at \*3.

113. This case is similar to *S.T.F.G.* Although Debtor is obligated to Movant under the Loan Documents, Movant's foreclosure of the Comal Real Property and the Hidalgo Real Property should be permitted because Debtor owns no interest in the Comal Real Property and the Hidalgo Real Property. [Exhibit H, App. 639-641; Exhibit J, App. 649-660]. Accordingly, the Comal Real Property and the Hidalgo Real Property are not property of Debtor's bankruptcy estate. Thus, the Comal Real Property and the Hidalgo Real Property are not subject to the automatic stay.

114. Accordingly, Movant requests a "comfort" order from this Court pursuant to § 362(j) confirming the automatic stay never applied to the Comal Real Property and the Hidalgo Real Property, and thus, under § 362(c)(1) the stay is deemed "terminated" as to such property. Movant asserts the stay has never applied to the Comal Real Property and the Hidalgo Real Property; however, Movant procedurally requests relief under §§ 362(c)(1), (j) out of an abundance of caution for the substantively identical ultimate result that neither the Comal Real Property nor the Hidalgo Real Property are subject to the automatic stay in this bankruptcy case.

**B.** **Brooks Real Property – Relief for "Cause" Under 11 U.S.C. § 362(d)(1)[6]**

115. In regards to the Brooks Real Property, Movant is entitled to relief from the stay because "cause" exists under 11 U.S.C. § 362(d)(1). On request of a party in interest, the court shall grant relief from the stay for cause. "Cause," as used in § 362(d)(1), has no clear and

---

[6] Because the Comal Real Property and the Hidalgo Real Property are not subject to the automatic stay in this bankruptcy case, Movant seeks *relief* from the automatic stay only as to the Brooks Real Property. By comparison, through its Motion, Movant requests an order confirming that the stay does not prohibit Movant's state law collection remedies against the Comal Real Property and the Hidalgo Real Property.

limited definition and, therefore, is determined on a case-by-case basis. *See In re Texas State Optical, Inc.,* 188 B.R. 552 (Bankr. E.D. Tex. 1995). "Cause" is an intentionally broad and flexible concept that permits the bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations. *See id.* "Cause" includes any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process. *See Little Creek Dev. Co. v. Commonwealth Mortgage Co. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir. 1986).

**(i)      Bad Faith**

116.    Courts frequently have held that a real estate case amounting to a two-party dispute and commenced to frustrate a foreclosure is filed in bad faith. *See In re FRE Real Estate, Inc.,* 450 B.R. 619, 622 (Bankr. N.D. Tex. 2011) (citing *Little Creek Dev. Co.,* 779 F.2d at 1073; *NMSBPCSLDHB v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.),* 384 F.3d 108, 129–30 (3d Cir. 2004); *Trident Assocs. v. Metropolitan Life Ins. Co. (In re Trident Assocs.),* 52 F.3d 127, 128, 131–32 (6th Cir. 1995); *Laguna Assocs. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs.),* 30 F.3d 734, 738 (6th Cir. 1994); *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),* 936 F.2d 814, 818 (5th Cir. 1991); *Carolin Corp. v. Miller,* 886 F.2d 693, 694 (4th Cir. 1989)); *see also In re Fry Road Assoc., Ltd.,* 66 B.R. 602, 605-06 (Bankr. W.D. Tex. 1986) (Ayers, C.J.); *In re WGMJR, Inc.,* 435 B.R. 423, 433 (Bankr. S.D. Tex. 2010).

117.    A bad faith filing is "cause" to lift the automatic stay pursuant to § 362(d)(1) to allow foreclosure to proceed. *See, e.g., In re Fry Road Assoc., Ltd.,* 66 B.R. at 607; *In re FRE Real Estate, Inc.,* 450 B.R. 619, 623 (Bankr. N.D. Tex. 2011); *In re WGMJR, Inc.,* 435 B.R. at 433 ("However, the stay in the instant case should lift for cause. First, Debtor's filing of the instant Chapter 11 case for the purpose of obtaining an unfair advantage in a two party dispute

leads the court to the conclusion that the case was not filed in good faith. … [T]he absence of good faith constitutes cause for lifting the automatic stay.").

118.    In determining whether a case was filed in bad faith, courts typically have looked for a fact pattern that may include one or more of the following non-exclusive factors:

- Debtor's only asset is a tract of undeveloped real estate;

- Secured creditor's lien encumbers such real estate;

- Debtor has no employees except for principals;

- Debtor's property generates little or no cash flow;

- There are few unsecured creditors and they hold relatively small claims;

- Bankruptcy was the only means of preventing creditor's state law collection;

- Improper pre-petition conduct by the debtor; and

- There is no realistic chance of reorganization.

See *In re FRE Real Estate, Inc.,* 450 B.R. at 622-23; *see also In re Fry Road Assoc., Ltd.,* 66 B.R. at 605-06.

119.    In *In re Fry Road Assoc., Ltd.,* this District has already ordered termination of the automatic stay on facts similar to this case.  Here, as also set forth in *Fry Road,* the following material, operative facts cannot be contested:

- The Brooks Real Property is an undeveloped tract of real estate [Exhibit C, App. 589, lines 8-12];

- The Brooks Real Property is Debtor's only asset [Exhibit D, App. 610-614];

- The Brooks Real Property is encumbered by Movant's lien valued at $932,669.41 [Exhibit A, ¶¶ 25, 36, App. 11-12; Exhibit B, App. 340-358, 488-506; Exhibit C, App. 589, lines 16-18; Exhibit D, App. 616];

- The Brooks Real Property is worth $36,000.00 [Exhibit M, App. 671];

- Debtor possesses no equity in the Brooks Real Property;

- The Brooks Real Property generates no cash flow [Exhibit C, App. 589];

- Debtor has no employees [Exhibit C, App. 578-579, lines 25-2];

- Ranger and American are the only *unrelated* unsecured creditors. Their combined claims amount to $4,056.04 [Exhibit D, App. 619; *see* Claims Register];

- Bankruptcy was the only means of preventing creditor's state law collection – Debtor faced non-judicial foreclosure of the Collateral and failed to adequately defend against the Lawsuit [Exhibit A, ¶¶ 64-66, App. 15];

- Improper pre-petition conduct by the debtor – Debtor's pre-petition transfer of the Comal Real Property without Movant's permission to A. Garcia, an insider and co-obligor on the Indebtedness, for zero consideration is a fraudulent transfer under 11 U.S.C. §§ 544, 548 and the Texas Uniform Fraudulent Transfers Act [Exhibit A, ¶ 62, App. 15; Exhibit C, App. 584, lines 12-14; Exhibit H, App. 639-641];

- Improper pre-petition conduct by the debtor – Debtor's pre-petition transfer of the Hidalgo Real Property without Movant's permission and without remission of any sale proceeds to Movant as lienholder [Exhibit A, ¶ 63, App. 15; Exhibit C, App. 587, lines 5-8; Exhibit J, App. 649-660]; and

- There is no realistic chance of reorganization – Debtor's sworn testimony that it has no intentions to reorganize or file a plan of reorganization [Exhibit C, App. 581, lines 5-12].

120.     The *Fry Road* opinion provides a detailed explanation of the Court's analysis of *Little Creek's* application to the same set of facts facing this Debtor.  This District explains that the *Little Creek* standards include consideration of the Debtor's evidence concerning an effective reorganization.  *See id.* at 606.  The *Fry Road* case (and this case) reflects the real and underlying issue, which should be the ultimate question in bad faith/good faith cases: is there abuse of the bankruptcy process?  *See id.* at 607.  The Court should lift the stay when there is no evidence that Debtor can benefit from a chapter 11 filing.  *See id.* at 607.  The Court should lift the stay when Debtor shows no evidence of (1) ability to sell its assets in order to recover any equity; (2) ability to preserve the asset pending a sale; (3) ability to secure new or interim financing; (4) ability to find new sources of capital; or (5) ability to continue operations.  *See id.* at 607.

121.     In this case, the affirmative evidence presented demonstrates that:

- Debtor is unable to sell the Brooks Real Property to recover any equity [Exhibit A, ¶¶ 25, 36, App. 11-12; Exhibit B, App. 340-358, 488-506; Exhibit C, App. 589, lines 16-18; Exhibit D, App. 616; Exhibit M, App. 671];

- Debtor is unable to preserve the Brooks Real Property pending a sale because it remains uninsured against casualty loss [Exhibit C, App. 590, lines 21-23];

- Debtor is unable to finance this chapter 11 case; [Exhibit C, App. 578, lines 14-20; Exhibit N, 719-727]; and

- Debtor is not operating [Exhibit C, App. 578, lines 21-24].

122.    A summary of the evidence shows that Debtor cannot generate cash for the benefit of the estate.  Debtor has no assets to liquidate for recovery of equity.  Debtor has no employees to protect, no jobs to save, no business to rehabilitate and no operations to preserve. Debtor represents nothing more than a shell company to liquidate its final inventory of undeveloped real property lots.  In the typical chapter 11 liquidation, the petition is filed and shortly thereafter, an orderly sale of assets is conducted.  Here, Debtor has already been unable to sell the Brooks Real Property for a substantial period of time prior to the Petition Date. Likewise, Debtor cannot provide any indication of its anticipated time frame to sell the Brooks Real Property through this chapter 11 case.

123.    Debtor is not operating.  Debtor is not paying Movant.  Debtor cannot sell the Brooks Real Property.  Debtor is incapable of obtaining financing or capital.  Debtor is abusing this bankruptcy case for the sole purpose to inequitably deprive Movant of any recourse to enforce its lawful collection rights.  There is no equity in the Brooks Real Property.  As such, there is no value to the estate to protect.  This bankruptcy case serves no purpose other than to postpone the inevitable foreclosure sale of the Brooks Real Property.

124.    As deadlines approached in the Lawsuit, Debtor realized that it could not comply with Movant's demands nor obtain a successful result in the disposition of the Brooks Real Property.  Immediately prior to the Petition Date, Debtor faced Movant's imminent posting of

the Brooks Real Property for a non-judicial foreclosure sale and dispositive motion practice in the Lawsuit. Consequently, Debtor resorted to this bankruptcy case as a means of last resort. Debtor's use of this bankruptcy case as a litigation tactic is an abuse of the reorganization process. Based on the evidence presented and the applicable authority, the Court should lift the automatic stay under § 362(d)(1) for "cause" because Debtor filed this case in bad faith.

### (ii)    Lack of Adequate Protection – No Equity and Shrinking Collateral Position

125.    Relief from the automatic stay should be granted as to Movant due to a lack of adequate protection of its interest in the Brooks Real Property. In order to establish "cause" due to a lack of adequate protection, the movant may do so by demonstrating that there is no equity in the collateral and that a decline in the value of the collateral is either occurring or is threatened. *See In re Kleibrink,* 346 B.R. 734, 760 (Bankr. N.D. Tex. 2006). For purposes of determining whether a secured creditor's interest is adequately protected, courts must analyze the property's equity cushion, which is the value of the property after deducting the claim of the creditor seeking relief from the stay and all senior liens. *See id* (citing *In re Mendoza*, 111 F.3d 1264 (5th Cir. 1997)). Once the movant establishes that a lack of adequate protection exists, the burden shifts to the debtor to prove that the secured creditor is adequately protected. *See id.*

126.    The value of the Brooks Real Property is $36,000.00. [Exhibit M, App. 671]. Movant's secured Claim is $932,669.41. [Exhibit B, App. 224]. Accordingly, there is no equity cushion in the Brooks Real Property over and above the value of Movant's Claim.

127.    Movant's security position in the Brooks Real Property shrinks every day. Assuming *arguendo* the value of the Brooks Real Property remains static since the Petition Date, Movant's loan-to-value ratio since the Petition Date has decreased due to interest accrual, property tax accrual, and other property expenses associated with preservation of the Brooks

Real Property. The aggregate monthly interest accrual is $3,126.38. [Exhibit A, ¶ 59, App. 15]. The estimated ongoing monthly ad valorem tax accrual against the Brooks Real Property is $88. [Exhibit D, App. 616; Exhibit F, App. 633; Exhibit G, App. 637]. In addition to the ongoing monthly accrual, the ad valorem taxes on the Brooks Real Property are delinquent for 2014. [Exhibit C, App. 591; Exhibit D, App. 616; Exhibit F, App. 633; Exhibit G, App. 637].

128. Debtor has not provided any manner of adequate protection to Movant. [Exhibit A, ¶¶ 60-61, App. 15]. Debtor is unable to do so because the Brooks Real Property is not income producing. [Exhibit C, App. 590, lines 7-10]. Debtor does not generate any revenue from which payments could be made. [Exhibit C, App. 578, lines 14-20, Exhibit N, App. 719-727]. Debtor does not own any unencumbered property to serve as supplemental collateral. [Exhibit D, App. 610-614]. Debtor has no intention to develop the Brooks Real Property. [Exhibit C, App. 590, lines 17-20]. Each day the Brooks Real Property sits idle and Movant is not paid, Movant's security interest continues to diminish. Continuing this case and allowing Debtor any additional time to retain the Brooks Real Property without paying Movant will only injure Movant further. The Court should lift the stay as to Movant for "cause" under §362(d)(1) because Movant's security interest in the Brooks Real Property is not adequately protected, and Debtor is incapable of providing any adequate protection to Movant in such regard.

### (iii)   Lack of Adequate Protection – Collateral Uninsured

129. The Brooks Real Property is not protected with insurance coverage of any kind. [Exhibit C, App. 590, lines 21-23]. A debtor that fails to adequately insure secured real estate against fire and other potential loss is not entitled to continued protection of the automatic stay, as this requirement is an element of adequate protection and falls within the "cause" grounds set forth in § 362(d)(1). *See First Nat'l Bank and Trust Co. of Rockford v. Ausherman (In re*

*Ausherman)*, 34 B.R. 393, 394 (Bankr. N.D. Ill. 1983); *In re Iliamna Lakeshore Condo., LLC*, 2010 WL 7920614 at *2, No. A10-00440-DMD (Bankr. D. Alaska July 9, 2010).

130.     In the event the Brooks Real Property is damaged or destroyed during the pendency of Movant's security interest, Movant will not be reimbursed for such loss. Consequently, the decline in value caused by any such loss against the Brooks Real Property would further diminish Movant's already negative, decreasing loan-to-value ratio.  In this way, Debtor has shifted the primary risk of loss to Movant as to the Brooks Real Property.  Debtor's only explanation as to why insurance coverage is not provided is because the Brooks Real Property consists of vacant, undeveloped tracts.  [Exhibit C, App. 590, lines 21-23].  Debtor's rationale fails to consider any number of natural disasters and accidents which could result in loss to the Brooks Real Property.  Such examples include, without limitation, sinkholes, earthquakes, fire, and premises liability.

131.     The burden of proof, however, is not on Movant to brainstorm on how it could possibly be injured as a result of Debtor's failure to insure the Brooks Real Property.  Instead, under § 362(g)(2),[7] the burden rests with Debtor to prove by affirmative evidence that Movant's security interest is adequately protected.  As the Brooks Real Property is uninsured against casualty and other loss, Debtor is incapable of meeting its burden of proof.  Accordingly, Movant is entitled to relief from the automatic stay under § 362(d)(1).

## C.     Brooks Real Property – Relief Under 11 U.S.C. § 362(d)(2)

132.     In addition, Movant is entitled to relief from the automatic stay because there is no equity in the Brooks Real Property and the Brooks Real Property is not necessary for Debtor's effective reorganization.

---

[7] *See* 11 U.S.C. § 362(g)(2); *see also In re Huie*, 2007 WL 2317152 at *8, No. 07-40627 (Bankr. E.D. Tex.  August 8, 2007).

### (i)      No Equity

133.      "Equity," as used in § 362(d)(2), portends the difference between the value of the subject property and the encumbrances against it.  *See Sutton v. Bank One, Texas, N.A. (In re Sutton),* 904 F.2d 327, 329 (5th Cir. 1990).  Specifically, for purposes of determining the equity prong of § 362(d)(2), the focus is on the value of the *debtor's* interest in the subject property compared to the value of the liens encumbering such property.  *See In re McManus,* 30 F.3d 1491 (5th Cir. 1994) (emphasis added).  The inquiry under § 362(d)(2) depends only on the relative value of the property in question and the debt it secures.  *See id.*  Accordingly, in determining equity under 362(d)(2), the analysis excludes evaluation of any other property or collateral, especially collateral belonging to a non-bankruptcy debtor.  *See id.* at *1.

134.      The value of the Brooks Real Property is $36,000.00.  [Exhibit M, App. 671].  The amount of Movant's Claim is $932,669.41.  [Exhibit B, App. 224].  The Brooks Real Property secures the entire amount of Movant's Claim.  [Exhibit A, ¶ 56, App. 14].  Accordingly, there is no equity in the Brooks Real Property over and above the value of Movant's secured Claim.

### (ii)     Not Necessary for an Effective Reorganization

135.      Once the movant under § 362(d)(2) establishes that the debtor has no equity in the collateral, the burden of proof shifts to the debtor to prove the collateral at issue is essential for an effective reorganization that is in prospect.  *See U.S. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 375-76 (1988).  In order for there to be an effective reorganization, the debtor must show the existence of a reasonable probability that a successful rehabilitation or a successful liquidation can be accomplished within a reasonable period of time and that the property in question will contribute to this effect.  *See In re Playa Dev. Corp.,* 68

B.R. 549, 555 (Bankr. W.D. Tex. 1986) (Kelly, J.).  In addition, to determine that there can be an effective reorganization of the debtor's business, the debtor must persuade the court that the operation of its business will generate sufficient income to pay debt service.  *See In re L & M Prop., Inc.,* 102 B.R. 481, 485 (Bankr. E.D. Va. 1989).

136.    In meeting its burden of proof, the debtor's evidence cannot be grounded solely on speculation and conjecture.  *See In re Playa Dev. Corp.,* 68 B.R. at 555.  Instead, the debtor must demonstrate a well-founded prospect of reorganization and identify the integral role that is assigned to the collateral in question.  *See id.*  At a minimum, the debtor must provide the court with a broad outline of how it intends to employ the rehabilitative mechanisms of the Bankruptcy Code to effectuate a reorganization within a reasonable time period.  *See In re L & M Prop., Inc.,* 102 B.R. at 484.

137.    Here, Debtor testified that it has no operations, generates no revenue and the Brooks Real Property does not produce any income.  [Exhibit C, App. 578, lines 14-24; 590, lines 7-10; Exhibit N, 719-727]. Debtor is incapable of demonstrating an effective reorganization without the wherewithal to finance the same.  *See, e.g., In re L & M Prop., Inc.,* 102 B.R. 481, 485 (Bankr. E.D. Va. 1989).

138.    Debtor testified that it has no strategy to reorganize and no plans to file a chapter 11 plan of reorganization.  [Exhibit C, App. 581, lines 5-12].  However, Debtor further testified that it desires to retain the Brooks Real Property during the pendency of this case in order to liquidate the Brooks Real Property.  [Exhibit C, App. 580, lines 15-16].  Accordingly, any effective reorganization for Debtor in this case requires a sale of the Brooks Real Property for a price sufficient to recover some amount of equity.  *See In re Fry Road Assoc., Ltd.,* 66 B.R. 602, 606-07 (Bankr. W.D. Tex. 1986) (Ayers, C.J.) (discussing the impact of the debtor's failure to

present evidence of its ability to sell its real estate to recover equity in the § 362(d)(2)(B) analysis concerning an effective reorganization). Without any timeline or strategy to accomplish the putative Brooks Real Property sale, Debtor exposes its terminal delusions on the prospects of reorganization.

139.    In reality, it is impossible to liquidate the Brooks Real Property at a price sufficient to recover any equity over Movant's Claim. The Brooks Real Property cannot serve any beneficial purpose to the bankruptcy estate in this case. As such, Debtor is unable to demonstrate the integral role assigned to the Brooks Real Property in this case. For these reasons, the Brooks Real Property is not necessary for Debtor's effective reorganization.

## V.
## RELIEF REQUESTED

**WHEREFORE**, Movant respectfully requests the following relief:

(A)    that RREF is authorized to pursue all collection remedies available under applicable non-bankruptcy law against the Collateral;

(B)    alternatively, to the extent the Court does not order such relief, that Debtor be ordered to provide Movant with adequate protection consisting of (i) proof of current, enforceable casualty insurance coverage securing the Brooks Real Property and the Hidalgo Real Property, and (ii) monthly payments of not less than the aggregate amount of $4,172.38, comprising (a) the combined monthly accrual of interest under the Indebtedness at the respective applicable non-default rates ($3,126.38) plus (b) the combined monthly accrual of estimated 2015 ad valorem property tax assessments against the Collateral ($1,046.00);

(C)    that Movant may immediately enforce and implement its collection rights as to the Collateral and that the Provision of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure shall not impede the enforcement and implementation of such rights; and

(D)    that the Court grant such other and further relief as is just and equitable.

Dated: April 30, 2015                          Respectfully submitted,

                                               **GARDERE WYNNE SEWELL LLP**

                                               */s/ Thomas Scannell*
                                               Robert T. Slovak (TX 24013523)
                                               Rachel Kingrey (TX 24068616)
                                               Thomas Scannell (TX 24070559)
                                               Matthew Pyeatt (TX 24086609)
                                               1601 Elm Street, Suite 3000
                                               Dallas, Texas 75201
                                               Telephone: 214-999-4685
                                               Facsimile: 214-999-3685
                                               rslovak@gardere.com
                                               rkingrey@gardere.com
                                               tscannell@gardere.com
                                               mpyeatt@gardere.com

                                               **ATTORNEYS FOR RREF CB SBL
                                               ACQUISITIONS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on April 30, 2015, a true and correct copy of the foregoing document was served on the parties set forth in the attached service list via the method set forth therein.

                                               */s/  Thomas Scannell*
                                               Thomas Scannell

## Service List

| | | |
|---|---|---|
| Mis Tres Properties, LLC<br>c/o counsel of record via ECF:<br>William R. Davis, Jr.<br>Langley & Banack, Inc<br>745 E Mulberry Ave, Suite 900<br>San Antonio, TX 78212<br>(210) 736-6600<br>Fax : (210) 735-6889<br>Email: wrdavis@langleybanack.com | Jaime Garcia<br>c/o counsel of record via ECF:<br>William R. Davis, Jr.<br>Langley & Banack, Inc<br>745 E Mulberry Ave, Suite 900<br>San Antonio, TX 78212<br>(210) 736-6600<br>Fax : (210) 735-6889<br>Email: wrdavis@langleybanack.com | Anastacia Garcia<br>c/o counsel of record via ECF:<br>William R. Davis, Jr.<br>Langley & Banack, Inc<br>745 E Mulberry Ave, Suite 900<br>San Antonio, TX 78212<br>(210) 736-6600<br>Fax : (210) 735-6889<br>Email: wrdavis@langleybanack.com |
| United States Department of Justice<br>Office of the United States Trustee<br>Judy A. Robbins<br>United States Trustee<br>c/o James W. Rose, Jr.<br>Trial Attorney<br>615 E. Houston, Room 533<br>San Antonio, TX 78205<br>Via First Class Mail | Miguel Chacon Farias and<br>Sandra Luz Vargas Valencia<br>3209 Violet Ave.<br>McAllen, TX 78504-3666<br>Via First Class Mail | Brooks County<br>c/o counsel of record via ECF:<br>austin.bankruptcy@publicans.com |
| Hidalgo County<br>c/o counsel of record via ECF:<br>austin.bankruptcy@publicans.com | Cathy C. Talcott<br>Tax Assessor/Collector<br>Comal County Tax Office<br>P.O. Box 659480<br>San Antonio, TX 78265-9480<br>Via First Class Mail | Luis M. Farias Soto<br>3209 Violet Ave.<br>McAllen, TX 78504-3666<br>Via First Class Mail |
| Jose Antonio Chacon Farias<br>3209 Violet Ave.<br>McAllen, TX 78504-3666<br>Via First Class Mail | | |

RREF CB SBL ACQUISITIONS, LLC'S BRIEF AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND
WAIVER OF THE THIRTY-DAY HEARING REQUIREMENT – SERVICE LIST